**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRISIS CENTER NORTH, INC., | : | Civil No. 1:26-CV-01015 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA COALITION AGAINST DOMESTIC VIOLENCE and PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is a motion to dismiss Plaintiff Crisis Center North, Inc.'s ("CCN") first amended complaint filed by Defendant Pennsylvania Coalition Against Domestic Violence ("the Coalition"). (Doc. 57.) For the reasons explained herein, the court will grant in part and deny in part the Coalition's motion to dismiss for failure to state a claim.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

CCN filed its original complaint against the Coalition and the Pennsylvania Department of Human Services ("DHS") on April 20, 2026. (Doc. 1.) Following the filing of the complaint, CCN applied for entry of default against DHS, DHS filed a motion to dismiss for failure to state a claim, and the Coalition likewise filed its own motion to dismiss for failure to state a claim. (Docs. 19, 23, 29.) The court subsequently denied CCN's application, granted DHS's motion to dismiss

CCN's complaint with prejudice, and granted in part and denied in part the Coalition's motion to dismiss. (Doc. 48.) The court continues the procedural history and background from that point.[1]

CCN filed a first amended complaint against only the Coalition on August 10, 2026, alleging substantially the same body of facts. (Doc. 52.) In addition to expanding the factual background, the significant changes in the factual background compared to the original complaint are the following allegations: (1) that DHS's contract with the Coalition gives it significant control over the Coalition's operations, *Id.* ¶¶ 57–74; (2) that CCN "believed that DHS intervened" to correct a mathematical error on CCN's scoresheet rather than that DHS actually intervened, *compare* Doc. 1, ¶ 70, *to* Doc. 52, ¶ 94; (3) that the Coalition informed the Pennsylvania Commission on Crime and Delinquency that the Coalition was investigating CCN in order to disrupt CCN's operations, Doc. 52, ¶¶ 133–138; and (4) that the Coalition's actions resulted in monetary and irreparable harm to CCN, *Id.* ¶ 241–246.

The first amended complaint raises the following claims: (1) Count I brings a 42 U.S.C. § 1983 claim under the First, Fifth, and Fourteenth Amendments to the United States Constitution against the Coalition; (2) Count II brings a freestanding

[1] For a more detailed description of the prior procedural history and background, *see* Doc. 48 pp. 1–11.

claim alleging that the Coalition violated Article I, §§ 1, 7, and 20 of the Constitution of the Commonwealth of Pennsylvania; (3) Count III brings a breach of contract claim against the Coalition arising from the Coalition's alleged breach of its grant agreement with CCN; and (4) Count IV brings a breach of contract claim against the Coalition based on an implied contract formed through the parties' course of performance and dealings over four decades. (Doc. 1, ¶¶ 259–330.)

The Coalition filed a motion to dismiss CCN's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 31, 2026, and contemporaneously filed a brief in support. (Docs. 57, 58.) CCN timely filed a brief in opposition on September 14, 2026, and the Coalition filed a reply on September 25, 2026. (Docs. 67, 69.) Thus, the motion to dismiss is ripe for resolution.

## Jurisdiction and Venue

CCN brings a 42 U.S.C. § 1983 claim against the Coalition, so the court has jurisdiction under 28 U.S.C. § 1331. (Doc. 52, ¶ 15.) Moreover, the court has jurisdiction over CCN's state law claims under 28 U.S.C. § 1367(a). Venue is proper in this district because a substantial amount of the events giving rise to CCN's complaint took place in this district.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

## DISCUSSION

### A. The Court will Dismiss the Due Process Claims Raised in Count I with Prejudice, but will Deny the Coalition's Motion to Dismiss the First Amendment Claim in Count I.

#### 1. CCN Sufficiently Pleads the Coalition is a State Actor

The First and Fourteenth Amendments apply to state actors, not private citizens. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019); *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Kach*, 589 F.3d at 646), *cert. denied sub nom. Borrell v. Richer*, 584 U.S. 993 (2018). And 42 U.S.C. § 1983 "holds wrongdoers liable for violating plaintiffs' rights" when those wrongdoers act "under color of state law." *Boyd v. Shriners Hosps. for Child.*, No. 25-1183, 2026 WL 1005549, at *2 (3d Cir. Apr. 14, 2026) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995)). A state actor and an individual acting under color of state law are the same. *See Borrell*, 870 F.3d at 160 (quoting *United States v. Price*, 383 U.S. 787, 794 n.7 (1966)). So, to state a § 1983 claim against the Coalition, CCN must allege it is a state actor. *See id.* at 160; *Parker*, 158 F.4th at 481. In determining whether a specific individual or entity is a state actor, the court asks whether the state "exercised control" over the specific conduct that gave rise to the plaintiff's constitutional claim. *Wang v. Univ. of Pittsburgh*, --- F.4th----, No. 25-1816, 2026 WL 1959171, at *13 (3d Cir. July 7, 2026) (quoting *Kach*, 589 F.3d at 649). When the state's involvement in the challenged conduct

or activity is not clear, the court employs "three broad tests generated by Supreme Court jurisprudence to determine whether state action exists." *Borrell*, 870 F.3d at 160 (quoting *Kach*, 589 F.3d at 646). They are:

> (1) [W]hether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach*, 589 F.3d at 646 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)) (citation modified). The Third Circuit has recognized that the state action doctrine is a "labyrinthine." *Leshko v. Servis*, 423 F.3d 337, 338 (3d Cir. 2005). Moreover, "both *Leshko* and *Kach* emphasize that the state action inquiry is fact-specific, and thus resistant to fixed categorization." *Oliver v. Serv. Emps. Int'l Union Loc. 668*, 415 F. Supp. 3d 602, 609 n.9 (E.D. Pa. 2019) (citing *Leshko*, 423 F.3d at 339; *Kach*, 589 F.3d at 646).

The court previously found that CCN had sufficiently pleaded that the Coalition is a state actor in its original complaint. (Doc. 48, p. 23.)[2] Now, the Coalition argues that the first amended complaint is deficient because "CCN abandoned its allegation that DHS intervened to correct a financial determination made by [the Coalition]." (Doc. 58, p. 12.) The Coalition further argues that the

[2] For ease of reference, the court uses the page numbers from the CM/ECF headers.

additional allegations compared to the original complaint do not cure this defect. (*Id.* at 13–15.)

The court disagrees with both arguments. First, the court's prior decision on this point was not predicated solely on CCN's allegation that DHS intervened. (*See* Doc. 48, p. 23–24.) It was also based on CCN's allegations "that the Coalition purported to make specific requests of CCN on DHS's behalf," and that the grant agreement states that DHS may accompany the Coalition during monitoring and evaluation visits. (*Id.* at 23.) These allegations form an independent basis for the court's prior decision and are present in the first amended complaint. (Doc. 52, ¶¶ 192–195; Doc. 52-2, p. 63.)

Second, even if those allegations were insufficient on their own, CCN's new allegations make up for it. CCN alleges that "[the Coalition] was specifically directed by DHS in its actions aimed at CCN." (Doc. 52, ¶ 265.) The Coalition argues that this allegation is based on CCN's mischaracterization of two exhibits. (Doc. 58, p. 14.) However, taken with the other allegations, the exhibits give rise to the reasonable inference DHS participated in the monitoring of the grant agreement. (*See* Doc. 52-15, p. 3; Doc. 52-16, p. 2.) Accordingly, the court will deny the Coalition's motion to dismiss Count I on the basis of its state action argument.

**2. The Court Will Deny the Coalition's Motion to Dismiss CCN's First Amendment Claims**

The Coalition challenges CCN's First Amendment pleading solely on state actor grounds. (Doc. 69, p. 10.) As discussed *supra*, CCN sufficiently pleaded state actor at this stage. So, the court will deny the Coalition's motion to dismiss the First Amendment claim in Count I.

**3. CCN Does not Allege the Coalition Deprived it of a Constitutionally Protected Interest, so the Court Will Dismiss CCN's Due Process Claims Against the Coalition.**

To state a procedural due process claim, a plaintiff must plead the following three elements: (1) they were deprived of life, liberty, or property; (2) by a state actor; (3) without due process of law. *Parker v. N.J. Motor Vehicle Comm'n*, 158 F.4th 470, 481 (3d Cir. 2025) (first citing *Reed v. Goertz*, 598 U.S. 230, 236 (2023); then citing *Blum v. Yaretsky*, 457 U.S. 991, 1002–03 (1982); and then citing U.S. Const. amend. XIV, § 1), *petition for cert. docketed*, No. 25-1351 (U.S. Jun. 4, 2026). "To establish a substantive due process claim, a plaintiff must prove (1) the particular interest at issue is protected by the substantive due process clause and (2) the government's deprivation of that protected interest shocks the conscious." *Hazzouri v. W. Pittston Borough*, 416 F. Supp. 3d 405, 416 (M.D. Pa. 2019) (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009)) (internal quotation marks and alterations omitted). Only those interests that are "'fundamental' under the United States Constitution"

warrant substantive due process protection. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (collecting cases).

The court previously dismissed CCN's procedural and substantive due process claims on the basis that the type of contract at issue here does not give rise to procedural or substantive due process protection. (Doc. 48, pp. 28–31.) The Coalition urges the court to dismiss the claim in the first amended complaint on the same grounds. (Doc. 58, pp. 16–17.) CCN responds with two arguments. First, that the parties' alleged implied-in-fact contract placed the survivors of domestic violence that CCN serves in a state of extreme dependence. (Doc. 67, p. 13.) And second, that the Coalition engaged in a boycott against CCN in violation of the master grant agreement. (*Id.* at 15–16.) CCN argues that both these theories give rise to procedural and due process protection.

The court agrees with the Coalition and will dismiss CCN's procedural and substantive due process claims with prejudice. CCN's extreme dependence argument is premised on potential harm to the people the funding is intended to serve. (*Id.* at 13.) However, harm to those people does not follow from the Coalition denying CCN funding. Even assuming harm to those people is sufficient for CCN to state due process claims, CCN has not alleged that the funds will no longer be used for the same services. Those same people can still receive the services the funds are intended to provide, but through a different provider.

CCN's boycott theory fails too. CCN attempts to frame this as a liberty interest rather than a property interest in a contract. (*Id.* at 15–16.) A liberty interest requires substantive predicates that govern official's decisions and limit official's discretion. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (citing *Hewitt v. Helms*, 459 U.S., 460, 472 (1983)). The anti-boycott provision does not limit the Coalition's discretion to accept applications or deny funding, so the court will not recast it as a liberty interest.

As the court stated in its previous memorandum, Doc. 48, pp. 29–30, the Third Circuit recognizes two contract rights "as property protected under the Fourteenth Amendment . . . ." *Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*, 49 F.3d 915, 932 (3d Cir. 1995). They are: (1) contracts conferring a quality of extreme dependence, or permanence in the case of tenure and (2) contracts containing a provision that they can only be terminated for good cause. *Id.* The boycott theory does not fit either prong.

**B. The Court will Grant in Part and Deny in Part the Coalition's motion to dismiss the Pennsylvania Constitutional Claims in Count II.**

The court previously declined to dismiss CCN's Pennsylvania Constitutional claims for injunctive relief without more comprehensive briefing. (Doc. 48, p. 33.) In the instant motion, the Coalition challenges Count II largely on the same grounds as it challenges Count I. First, it argues there is no state action, and

second, it argues that CCN has not alleged a protected property interest. (Doc. 58, pp. 21–22.) Both Pennsylvania state action principles and Pennsylvania due process principles are informed by their federal equivalents. *Armslist LLC v. Facebook, Inc.*, 335 A.3d 1, 8 (Pa. Super. Ct. 2025) (surveying federal decisions on state action to inform construction of Pennsylvania law); *City of Phila. v. Pa. Ins. Dep't*, 889 A.2d 664, 670 (Pa. Commw. Ct. 2005) ("The due process standards of the United States and Pennsylvania Constitutions are essentially the same.") CCN does not argue that the court should apply different standards to its Pennsylvania Constitutional claims or supply any case law to the contrary. (*See generally* Doc. 67.)

Accordingly, the court adopts the same position as it does for the federal claims. The Court will deny the Coalition's motion to dismiss Count II's free expression claims and dismiss the due process claims in Count II with prejudice.

**C. The Court will Grant the Coalitions' Motion to Dismiss the Breach of Contract Claim in Count III.**

CCN brings a breach of contract claim against the Coalition in Count III of the complaint. (Doc. 54, ¶¶ 296–313.) To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege: (1) a contract, complete with its essential terms, existed; (2) the defendant breached the contract; and (3) that the plaintiff suffered damages as a result. *Doe v. Univ. of Scis.*, 961 F.3d 203, 211 (3d Cir. 2020) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law*

*Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)). In addition to the pleadings also found in the original complaint, Count III alleges a breach of the grant agreement based on a failure to act in good faith. (*Id.* ¶ 309.)

The Coalition argues that the court should dismiss Count III because CCN has not remedied the deficiencies the court found in the original complaint. (Doc. 58, p. 23.) Further, the Coalition argues that CCN failed to identify what provision of the Grant agreement it allegedly breached. *Id.* CCN responds by pointing out multiple additional allegations in the amended complaint compared to the original complaint. These include allegations that the Coalition deviated from program standards, that the Coalition made intentional misstatements, pretended CCN was not complying with program standards, and threatened to cancel the contract. (Doc. 67, pp. 17–18.)

The court finds that these additional allegations are insufficient to infer a breach of the implied duty of good faith. The court dismissed CCN's original claim for failing to point to specific provisions that the Coalition breached. (Doc. 48, p. 38. (citing *Philidor Rx Servs. LLC v. Polsinelli PC*, 552 F. Supp. 3d 506, 513 (E.D. Pa. 2021)). Here, too, CCN fails to do so. In Count III, CCN's only additional factual allegation against the Coalition is that it "placed CCN on "provisional" status and withheld funding without justification." (Doc. 52, ¶ 304.) Elsewhere in the complaint, CCN does point to the program administration

standards in Rider 5 of the grant agreement. (*Id.* ¶¶ 128, 148–49.) But, as in its prior complaint, CCN does not allege that the grant agreement contains a provision limiting the Coalition's authority in this area. (*See* Doc. 48, p. 38.) Because CCN has not pointed to a specific provision of the contract that Coalition failed to perform in good faith, the court will dismiss Count III with prejudice. *See Philidor*, 552 F. Supp. 3d at 513.

**D. The Court Will Grant the Coalition's Motion to Dismiss the Breach of Contract Claim in Count IV.**

CCN's last claim is for a breach of contract implied-in-fact through the parties' performance and course of dealings over the past four decades. (Doc. 52, ¶¶ 314–330.) CCN argues that its contract with CCN was "modified by decades of conduct, course of dealing, and course of conduct." (Doc. 67, p. 19.) The alleged terms of this implied contract were that CCN would apply for funds and, so long as it provided high-quality services, the Coalition would accept the application and award CCN funds if it qualified. (Doc. 52, ¶ 316.) Further, CCN argues that the Coalition breached this implied contract by saying it would not renew CCN's contract and barring CCN from even applying. (Doc. 67, p. 19.)

The court will not find that the parties formed an implied-in-fact contract. Under Pennsylvania law, an implied-in-fact contract cannot exist where an existing contract deals with the same subject. *Martin v. Snap-Tite, Inc.*, 641 Fed. App'x 126, 129 (3d Cir. 2016) (citing *Mill Run Assocs. v. Locke Prop. Co., Inc.*, 282 F.

Supp. 2d 278, 293 (E.D. Pa. 2003)). CCN does not dispute that. (Doc. 67, p. 20.) Instead, CCN argues that the grant agreement does not govern renewal. *Id.* Despite that argument, the grant agreement provides:

> Failure to perform according to the provisions of the Grant Agreement or failure to comply with any PCADV approved corrective action plan will subject the Grantee to a range of sanctions including, but not limited to, . . . refusal to renew Grant funding.

(Doc. 52-2, p. 59.)[3] Given this provision, the terms of the alleged implied-in-fact contract are expressly governed by the grant agreement. Accordingly, the court will dismiss Count IV with prejudice.

## CONCLUSION

For the foregoing reasons, the court will deny the Coalition's motion to dismiss the First Amendment and free expression claims in Count I and Count II. The court will dismiss all other claims in the first amended complaint with prejudice. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 30, 2026

[3] The court may consider exhibits attached to the complaint, matters of public record, and documents "*integral to or explicitly relied* upon in the complaint . . ." when ruling on a motion to dismiss. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (first quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); and then quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).